Robert McFerson, Appellee, v. Argyle Savings Bank,
Appellant.

**SALES: Fraud—Unallowable Rescission in Law Action.** The owner of
1  a bank certificate of deposit who is induced by the cashier of the
bank which had issued the certificate to surrender the certificate to
the cashier and to accept in lieu thereof the personal promissory
note of the cashier (who thereupon collected the certificates from
the bank) may not, in an action *at law* against the bank *alone*, as-
sume to repudiate the transaction with the cashier and recover of
the bank on his original cause of action against the bank; and this
is true even though it be conceded that the cashier fraudulently con-
cealed his insolvency from the said certificate holder.

**NEW TRIAL: Grounds—Failure to Satisfy Court of Right to Recover.**
2  The fact that the trial court is not satisfied that the prevailing

party, upon whom rests the burden of proof, is entitled to recover, is, in and of itself, grounds for a new trial; and especially is this true when the unsatisfied state of mind of the court is revealed by its own written opinion denying a new trial.

**APPEAL AND ERROR:**    Argument—Form of Printing Condemned.
3    The practice of printing arguments in a style other than as provided by the rules is condemned: e. g., printing with a plethora of capital letters.

Headnote 1:  7 C. J. p. 663.  Headnote 2:  29 Cyc. p. 835.  Headnote 3:  3 C. J. p. 1437 (1926 Anno.)

*Appeal from Lee District Court.*—W. S. Hamilton, Judge.

October 17, 1924.

Rehearing Denied February 20, 1925.

Action at law, to recover from the defendant the sum of $5,500 on an alleged existing indebtedness owed by the defendant to the plaintiff.  The petition alleged that the plaintiff had received for the money due him three promissory notes, aggregating the sum of $5,500, and signed by L. A. Nisely, who was the cashier of the defendant.  In the first count of his petition, he alleged that Nisely had represented to him that such notes were the notes of the defendant bank.  In a second count, he pleaded the same facts, averring therein, however, that Nisely *fraudulently* represented to him that the notes in question were the notes of the bank.  The defense was a general denial, and an averment that the plaintiff loaned his money to L. A. Nisely personally, and took from said Nisely his promissory notes therefor.  The answer also pleaded an estoppel.  There was a verdict and judgment thereon for the plaintiff, and the defendant appeals.—*Reversed.*

*E. W. McManus* and *Boyd & McKinley,* for appellant.

*Hughes & Dolan,* for appellee.

Evans, J.—I.  The plaintiff attached to his petition copies of his three promissory notes, as exhibits, and alleged concern-

ing the same that he was induced to take "three notes there-
for, copies of which said notes are hereto at-
tached, marked Exhibits A, B, and C, and made
a part hereof; and that plaintiff took said notes
believing, at the time, that the said sum of $5,500 due him from
the defendant was the same indebtedness of defendant afore-
said, but in another form."

1. SALES: fraud: unallowable rescission in law action.

In the second count of his petition, he charged as follows:

"And defendant, by its cashier, L. A. Nisely, gave to him
three notes, copies of which are hereto attached, marked Exhibits
A, B, and C, aggregating in amount to $5,500, which said notes
the defendant, by its cashier, L. A. Nisely, falsely and fraudu-
lently represented that said notes were the notes of defendant;
and plaintiff, relying thereon, was induced to believe, and did
believe, said notes were the notes of defendant, when in fact and
in truth they were not, which was well known to the defendant;
and plaintiff, relying upon the false and fraudulent representa-
tions aforesaid, that the notes above described were the notes
of defendant, believed, and did believe, that the sum represented
by said notes was the same indebtedness of defendant to him,
but in another form; and that, by reason of the false and fraud-
ulent representations aforesaid, and upon which he relied,
plaintiff has been damaged in the sum of $5,500, for which he
asks judgment against defendant, with interest and costs."

In support of these allegations, the plaintiff testified as
follows:

"I told him that these certificates in there were only draw-
ing 4 per cent, and that it is worth 6 per cent to me any place.
He said: 'If you can leave this in here any length of time,
we will insure you 7 per cent as long as you could leave it with
us.' He said: 'The bank can give you 7 per cent, on account of
this here shortage.' We figured up, and seen how much we had.
He proposed to give me these bank notes, and I said I didn't
want them. I said: 'I need this money; I want to buy some
stock and build me a residence;' and so he went back and
showed me the deposit boxes. I told him I had no place to keep
these notes, and I didn't want them on that account. He went
back and showed me the deposit boxes, and said: 'You can
have this box as long as these notes are in here, as long as the

bank owes it to you.' I said I would have to have the notes so I could draw some out occasionally. We drew them that way. He said: 'If you have to have the money, we can pay you any time.' He fixed up the notes there in the bank.''

It also appears that the plaintiff at the same time delivered to Nisely certain certificates of deposit and checks, including a personal check issued by Nisely personally to the plaintiff in a personal transaction between them. It also appeared in evidence on behalf of the defendant that the consideration of the notes included the surrender by plaintiff to Nisely of a note for approximately $3,100, which had been executed and delivered one year prior. The existence of this item is denied by the plaintiff, and we treat the denial as true, for the purpose of our consideration of the case. This transaction was had on May 5, 1919. On November 1, 1919, the state banking department closed the doors of the defendant bank, and continued in possession thereof for a period of five weeks. Account was taken of its assets and liabilities, and its capital was found to be greatly impaired. An effort was made to rehabilitate it by issuing additional stock to new investors. This effort was successful. New men were induced to put in new capital, and new stock was issued therefor. With its new blood, the bank was reopened, and new officers were elected and new control was effected. The plaintiff knew these facts at the time. He knew that the operation of the bank was suspended, and that new capital was being subscribed for its reorganization. He made no claim at any time that the bank was owing him the debt now sued on. On the contrary, he claimed the debt from Nisely personally. On April 1, 1920, he began an action on the notes against Nisely personally, and such action is still pending. In September of the same year, he commenced this action against the bank. His acts subsequent to May 5, 1919, which are here set forth, are pleaded in the answer as an estoppel.

It will be seen that the question which goes to the heart of the case is: Can the plaintiff, in an action at law against this defendant alone, gain any standing by his purported repudiation or rescission of the notes which he accepted from Nisely on May 5, 1919? Can he, in an action at law against this defendant alone, rescind his contract with Nisely as the same is

embodied in the notes set forth? And can he, by such pur-
ported rescission, reclaim from Nisely the cause of action orig-
inally held by him against this defendant? Can he revive such
former cause of action against this defendant without re-estab-
lishing the status quo of this defendant? Having transferred
his cause of action against this defendant to Nisely personally,
and accepted from Nisely his personal notes, and having enabled
Nisely legally to collect such original cause of action from this
defendant, can he ignore such transaction and recover directly
from this defendant upon his former cause of action, notwith-
standing the discharge of such cause of action by a payment
to Nisely?

It avails him nothing, as against this defendant, to say that
Nisely fraudulently represented the notes to be the notes of the
bank. He does not claim to recover on them as such. He pleads,
in support of his charge of fraud, that they are not the notes
of the bank. The notes showed on their face that they did not
purport to be the notes of the bank. The plaintiff is an intelli-
gent man, long experienced in business, and able to read and
write. He was charged with knowledge of the contents of the
notes accepted by him. Even if fraudulent, they were not void,
but voidable only. If voidable, they were so only at the election
of the plaintiff. In consideration of these notes, he transferred
to Nisely personally the evidence of debt which he held against
this defendant in the form of certificates. Some of these bore
4 per cent interest. The notes received by him bore 7 per cent
interest. Needless to say that, if Nisely has collected these cer-
tificates from the bank, or has transferred them for value to
others, the transaction between Nisely and plaintiff would oper-
ate as a fraud upon the bank, in the event that plaintiff were
permitted now to establish his former claim against the bank.
If the action of Nisely was a fraud upon the plaintiff, it was be-
cause Nisely concealed his insolvency. But the transaction be-
tween plaintiff and Nisely operated no less as a fraud upon
the bank, if the bank is to be held liable to the plaintiff for the
former indebtedness. In such fraud the plaintiff participated,
in that he knew that Nisely was acting in his own personal in-
terest. The bank received no benefit whatever from the trans-
action, and was not responsible as a principal for an act which

Nisely purported to do in his own personal right. All that need be said now is that the plaintiff is in no position in this action to rescind his transaction with Nisely, whereby he parted with his cause of action against this defendant. In a suit to rescind or to reform, Nisely would be a necessary party, and the jurisdiction would be in equity. If we were to assume equity jurisdiction in the consideration of this record, the plaintiff would still fail. For the purpose of this appeal, we are required to accept all the plaintiff's evidence as true, so far as it is consistent with itself. But in an equity suit, triable here *de novo*, the credibility of his evidence would be subject to question. Some of it appearing in this record could not be accepted as true. This is so as to his sweeping denial of signatures. Nor could we doubt, upon such consideration, that the indebtedness represented by the three notes includes a previous note taken by plaintiff from Nisely in 1918. All that we hold, however, at this point is that plaintiff's transaction with Nisely is not subject to reformation or rescission in this action, and that, while such transaction stands unreformed and unrescinded, the plaintiff has no title to his former cause of action which he transferred to Nisely. For this reason alone, he must fail in this action.

II. In overruling the motion for a new trial, the trial court filed his decision in writing, as follows:

"I have given very careful attention to the motion for a new trial filed in this case, and have examined the briefs and authorities with great care. In deciding to overrule the motion for a new trial, I wish to state that when, upon the trial of this case, a motion for a directed verdict in favor of the defendant was made, I was of the opinion at the time that the facts in evidence did not authorize the plaintiff to recover in this action. This opinion of mine, however, was not of that certitude which I deemed should be entertained by the trial judge in sustaining the motion. I am still of the opinion that the facts in evidence do not authorize a recovery in favor of the plaintiff, but my opinion still lacks that certitude which I think should be possessed by the trial judge in sustaining this motion for a new trial. The motion raises several very serious legal ques-

2. NEW TRIAL: grounds: failure to satisfy court of right to recover.

tions. They are all, however, clearly raised in the record, and are such that the Supreme Court can pass upon and finally determine. If the motion for a new trial should be sustained, the same doubtful legal questions would be presented to the trial judge, and I deem it better that they be first determined and disposed of by the Supreme Court. I have prepared an order overruling the motion for a new trial, giving the defendant its proper exceptions.''

The foregoing of itself constitutes sufficient ground for reversal. There was no burden of certitude upon the defendant. On the contrary, such burden was upon the plaintiff. This writing discloses that the plaintiff obtained a judgment which did not have the approval of the court that entered it. The defendant was entitled to a directed verdict or to a new trial, unless the trial judge was convinced that the plaintiff was entitled, upon the record, to judgment. The writing discloses that he was not so convinced. On the contrary, he believed that the plaintiff was not entitled to judgment. His want of certitude operated against the plaintiff, and not against the defendant. *State v. Billings*, 81 Iowa 99.

III. Appellee has filed a motion to strike appellant's argument, for failure to comply with the rules. The principal attack is directed against the failure to use the kind of type legally required in the printing of the same, in that a considerable amount of the argument is printed in capitals. It must be said that the appellant has made very free use of capitals, which, in some parts of his argument, cover the entire page. This method has undoubtedly been adopted in good faith and in pardonable zeal to bring the matters thus printed to the attention of the court. We have to say, however, that such method is not helpful to the end thus desired. The growing practice is one which we prefer to check, rather than to encourage. There can be no special objection to their occasional use in a headline. When used to a greater extent, they become only an annoyance and an added difficulty to the reading of the page. Counsel for appellant have not originated the sin thus charged against them. The same practice has been indulged in hitherto not infrequently by other counsel, who have not evoked, however, the challenge

3. APPEAL AND ERROR: argument: form of printing condemned.

of their adversaries. We think the use of capitals in appellant's brief has been clearly excessive, as a departure from our rules of printing. We do not, however, in such a case, strike the argument. We deem it a sufficient remedy to penalize the violation of the rules by a proper taxation of costs. No costs will be taxed for the printing of appellant's brief.

The judgment entered below is reversed.—*Reversed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.